May it please the Court. I'm Sean Claggett. I represent American Monument Foundation. I'd like to request three minutes for rebuttal. All right. Good morning. Go ahead. Good morning. This morning I would like to focus on three key points. First, that AMF was a creditor pursuant to the relevant fraudulent transfer laws. Second, that the transfer between Fairbrother and Global was, in fact, a fraudulent transfer. And third, that Global has conceded that AMF is a creditor pursuant to the relevant fraudulent transfer laws and that the transfer was a fraudulent transfer. Did you say they have conceded? Yes, because they failed to address these issues in their brief. They've argued only that we waived it by not bringing it up below, and they've not addressed at all whether or not we have standing as a creditor nor whether the transfer itself was a fraudulent transfer. As to AMF being a creditor of both Fairbrother and Global, it's pursuant to NRS 112.1504. Pardon me, counsel. AMF is a creditor if it has a claim. Correct. The only basis of AMF's claim, if I understand it correctly, is that the contract that AMF entered into with Fairbrothers was entered into as a result of fraud by Fairbrothers because Fairbrothers represented that he had other buyers for the presidential monument, and he was lying through his teeth. Is that your case? That's correct. You lost on it. If we affirm the district court finding that there was no fraud and there was no fraud in the inducement because, among other things, the contract had an integration clause which said that any representations are irrelevant and the contract was drafted by AMF, if we affirm on that, you don't have a claim. If you don't have a claim, you're not a creditor. What's this case about? Your Honor, I don't agree with that. When you look at the idea of the claim, when you read the statute, the statute is clear in the way that it's read. If we decide that you don't have a claim, right, you're not going to take cert on this case. You're through. You're ended. Then you don't have a claim. And we find that you never did have a claim, that you asserted a claim. Anybody can assert a claim. Well, Your Honor, that would be the situation then that to have a claim, it would have to be liquidated. No, it has to be a valid claim. If you don't have a valid claim, you don't have a claim. Well, we believe we had a valid claim. But you've now found out, so the judge who tried the case, that you don't have a valid claim, and you're now appealing that determination to us. And if we decide to affirm the trial judge on that issue, you don't have a valid claim. Well, I know I'm not going to. I wouldn't claim mean like a right to payment, whether or not the right is reduced to a judgment liquidated, unliquidated, fixed, or whatever. But if so, just being able to, say, have a complaint or just being able to state something is not the same as having a right to payment. Well, at the time that the complaint was made, and I realize that this issue was litigated in Colorado. It was dismissed for lack of jurisdiction there. It came to Nevada. We immediately filed suit. We believed at the time that Mr. Fairbrother had fraudulently induced our claim. But it would seem to me if we accept your argument of claim, everyone that files a lawsuit would have a claim that you want. And I don't think that that's what the statute means. Okay. Because then the motivation, and you have to realize you're looking at three judges, and if filing a lawsuit gives a person that means they have a claim under this statute, then why don't we open the floodgates? Everyone just file a claim and then file a lawsuit, then suddenly have a claim, and then suddenly become a creditor. It can't mean just that. There's got to be more. Sure. And I understand that. But in the way that it's being addressed by the Court, if, in fact, the only way that you have a claim is to ultimately prevail, then the way that the statute is drafted and that it's disjunctive saying that or it could be liquidated, unliquidated, disputed, undisputed, in this case, if it's a disputed claim and you lose. All right. It was at the beginning, but it no longer is. The claim has been decided against you. Sure. So it's not disputed. It's over. Or at least after we decide it will be over. Sure. And the issue with the trial court, though, they never got to the point of addressing the analysis of the fraudulent transfer because without the original ---- and understand that under the ---- Well, can't we do it? We can say we affirm the district court, you don't have a claim. Certainly. And the ---- and, Your Honor, as far as that goes, I understand what you're saying. The ---- our position has been is that when we get to the point of the fraudulent transfer, and if we're not here, obviously, we believe that our brief was focused on the fraudulent transfer issue, and additionally we had the fraud and the inducement. Now, at the trial, there was no evidence submitted whatsoever by anybody other than our client as to whether or not there was a fraudulent inducement. Our client said, listen, we had a deal with Mr. Fairbrother. We entered into the agreement with Mr. Fairbrother, and that when he told us there was several misrepresentations, one being that the condition of the monuments, two, that there was a buyer, there were several things put into place. None of those ended up being true. Our clients had paid for, in cash, the presidential monument. But your contract excluded all that. Well, Your Honor, I don't believe that the contract itself, if you're saying fraud and the inducement, even if there's an integration clause or a merger clause, prevents the argument later that there was fraud in the inducement. And at trial, there was no subsequent testimony outside of our clients that would have rebutted that issue. You've got a ---- you're relying on him telling you, you better buy this monument from me because I've got a couple of people who are interested in this, and this monument's in great shape, right? Correct. And you've got a contract that says that any representations, any warranties, any statements are specifically excluded as a consideration for ending a contract. It's an integration clause. What fraud and the inducement is there that can overcome that integration clause on these facts? Well, Your Honor, what you have to look at is there's two separate pieces of art that we're talking here, the presidential monument, which our client paid cash, and the separate constitutional monument. For which you never paid a dime. Excuse me? For which you never paid a dime. No. The presidential monument, we paid cash. I understand that. The constitutional one, we did not. And there was subsequent litigation between Mr. Fairbrother and Mr. Nevitt, who has other companies, in which Mr. Nevitt, in his personal capacity, and Mr. Nevitt, through one of his companies, obtained substantial judgments. And so as far as dealing with Mr. Fairbrother and Mr. Fairbrother making an argument, hey, I want you to pay me now, my client's position was, why would I pay you when you owe me all this money? The amount that I owe you for this $2.5 million is much less than you owe me. You mean AMF had it set off? Not AMF, but Tom Nevitt, who is the managing member of AMF. Is his name in these pleadings? Is he a party? No, Your Honor. Then why are we talking about him? Well, I want to get to the point that the issue of the thinking behind why would AMF not pay Mr. Fairbrother? Who cares about the thinking? You entered into a contract which said no representations that have been made earlier have any effect on the entering into this contract. And you drafted that contract. You wrote it yourself. You put it under Fairbrother's nose, and he signed it. Next. Your Honor, the next issue that we would discuss as far as the assignment itself, if the assignment from Fairbrother to Global was, in fact, a valid assignment, there was no manifestation that the assignment was ever made. You never got any notice of the assignment, so you don't have to perform to Global. Is that your argument? Correct. We litigated against Mr. Fairbrother for years. And if you believe the documents that were produced at trial, then Fairbrother Do you know about it now? Well, we learned about it once. Well, what about saying now? Now you know about it. Certainly. Next. Well, Your Honor, at this point, I guess I'll just reserve the remaining time for my rebuttal. Thank you. May it please the Court, I'm Sean Mangano. I'm representing Global Eventmakers. Good morning. Keep your voice up. Can you hear me now? I can, but that's better, I think. I think the panel, if you step back and you look at the arguments and you conceptualize what they're saying with regard to the fraudulent inducement claim, essentially what you're saying is that Mr. Fairbrother came into this transaction and said, I have someone that wants to buy a widget, okay, and I want you to buy the widget from me and I will present these other buyers. Well, it's not like Mr. Fairbrother received $2.5 million in cash. He received a promise to pay from AMF. So I've had a difficult time trying to wrap my arms around what exactly the nature of this fraudulent transfer is. I mean, when it's distilled to its very core. Are you addressing fraud in the inducement of the purchase contract or fraudulent assignment? No, fraud in the inducement. All right. Sorry, Your Honor. So I would think from a conceptual standpoint that if you had fraud in the inducement under this sort of scenario, you would have money changing hands. Counsel, rather than giving us a relation or even a jury argument, why don't you tell us whether the trial court was correct in determining, as it did, and whether there was substantial evidence to sustain the trial court's finding and whether it applied the law correctly. If you do all that, you'll have a lot less time to work. Thank you, Your Honor. Would you like me to address the fraudulent transfer or the fraud in the inducement? The fraud in the inducement of the contract. Okay. Well, the fraud in the inducement, the panel's presented with an argument that there was no, it was uncontroverted testimony by Mr. Nevitt that he was fraudulently induced into this transaction. We submitted in our briefs, and I think the record clearly supports the fact that just because we have an AMF witness that testifies and we don't present a witness that offers contrary evidence, what the trial court was presented with was significant documentary evidence which contradicts the self-serving statements of Mr. Nevitt at the trial court level. Are they even relevant? Excuse me? Are Mr. Nevitt's statements of what he thought relevant? Sure. Sure, they're definitely relevant. They are relevant? In other words, if he testifies that representations were made to him, the purchase contract integration clause is not valid to exclude those as a matter of relevancy? Well, Your Honor, the issue comes as an evidentiary issue, can you use the parole evidence rule or that integration clause to bar that testimony? The court did not do that. The court listened to Mr. Nevitt and then rejected his testimony based upon all the other documents that he was confronted with on cross-examination. So what I would say is all there is — Do those documents constitute substantial evidence? Beyond substantial evidence, it falls into the purview of the trial court's discretion of listening. It falls into the trial court being able to evaluate the credibility of the witness. The trial court was there, listened to Mr. Nevitt's testimony, and in view of cross-examination and him being confronted with a litany of other documents, sat there and said, I don't believe you're telling me X, Y, and Z occurred. But in view of everything that I've — you've been presented with on cross-examination, I don't believe your testimony. And that falls squarely within the trial court's discretion in ruling on this issue. But independent of that, there is, of course, there is substantial evidence. If you look at the documentary evidence that Mr. Nevitt was confronted with, there is a long line of acts by Mr. Nevitt, by AMF, which confirmed the obligation to pay Mr. Fairbrother $2.5 million. All right. Let me ask you this. Just we'll take you back to where we started with Appellant's counsel. On whether AMF is a creditor, because the court found that AMF was not a creditor, correct? That's correct. And then because the court made that finding, it didn't make certain other findings. Is that correct? It stopped at that point because — Yes. It became, what, a standing issue, I suppose, at that point. Now, so our resolution of — we discussed this. Our resolution of whether AMF is a creditor, is that just doing statutory construction of the Nevada statute? Or does it involve as — if at the end of this, if we feel that AMF doesn't have a claim, then it doesn't really matter? Or what — how do you propose that we approach that, reviewing that? Well, as we've argued, there's an issue we've raised about waiver, because this is the first time we're hearing this argument, that they qualify as creditor status based upon a pending claim. That was never raised before the district court. And as we've cited in our brief, I mean, one of the obligations for this court, I mean, this court is aided by any analysis that a district court provides to it based upon — Well, what did the district court say about whether they were a creditor or not? Well, it's interesting. It's interesting — I don't want to be interested. Just tell me what they said. Well, they said they're not a creditor, but they said it at two points. They said it in response to a motion for summary judgment. They said AMF does not qualify as creditor status, but the opinion said you can proceed on this fraudulent transfer theory as an affirmative defense. Now, AMF proceeded through trial with the theory that they were, in fact, entitled to assert the affirmative defense of fraudulent transfer. What that does to this court is it — you're not faced with a situation where they were not allowed to present any evidence with regard to the fraudulent transfer theory because they did so on an affirmative defense basis through trial. So if the court found — the court below found that it was not a fraudulent transfer, and we believe that the court correctly did so or was supported by substantial evidence on that, then, therefore, does that — ergo, is the conclusion that there is no claim, and, therefore, you bootstrap it back to they aren't a creditor because they didn't have a — we ultimately now know we didn't have a claim. If we didn't know that, then we now know it, and so, therefore, the summary judgment is correct? Your Honor, I would — I would say that that's correct, but also there could be a separate and independent basis to affirm the trial court's decision because the evidence was presented. The evidence that all of this bad stuff allegedly occurred, they weren't precluded from arguing that. So — so if you would actually undertake an analysis that whether or not a fraudulent transfer occurred, if we assume that they qualify for creditor status, it's still not going to carry the day. So there would be a separate and independent basis to look at the trial court's record and say, no, I mean, even if the judge — I understand your argument. Thank you. And — and with regard to fraudulent transfer, it's — it's a unique case in that the claims that were pending when they filed suit — or when they counterclaimed against Global — fraudulent transfer, intentional interference with prospective economic advantage, and special damages. The intentional interference claim was withdrawn by AMF. So now the judge is faced with what claims am I really looking at? I'm looking at fraudulent transfer claim and a special damages claim. So the — I guess the predicate claim that they would be basing their recovery on would be a special damages claim. If you take out the intentional interference claim, you've got special damages, fraudulent transfer. There was absolutely no evidence in the record to support a special damages award under Nevada law. So it's — it's — it's a case where AMF comes to the court and says, we are a creditor because we had a claim. But really, when you whittle it down, there was no claim that was sustainable. And it — and it relates back to — back to the question by the panel or the — that are you has a claim for purposes of creditor standing under the Fraudulent Transfer Act. And that can't possibly be the result because what it does is it shifts the burden on the defending party to what? Send a Rule 11 letter? File a Rule 11 motion? You don't have any basis for your claim? It really — it's a stretch to say that just because you file a lawsuit, then you qualify for creditor steps, particularly under these — these facts, where there are one non-attorney's fees — But on the other hand, it probably couldn't be the extreme that you don't have to have won yet to say that you have a claim, right? I think that would have to be — that would have to be true. I mean, if I had a — if I had a contract claim against a party and I hadn't prevailed, I'm a creditor. Right. So it's either extreme is — you're — I'm just saying either extreme has its weak points. So — Exactly. And to be under this scenario, it highlights the fact of what's a — what does a defending party do to demonstrate that they're not a creditor when faced with a complaint that lacks merit? Even if they were a creditor, didn't Judge Pro make a finding that by giving up the $67,500 claim that Global had against Fairbrother, and by assuming the costs of litigation in this case, fair consideration was given for the assignment, and therefore it was not a fraudulent transfer? Yes. Yes. I mean — Do you dispute that finding? No. No, I do not. I mean, Judge Pro went through and looked at this transaction. And the other consideration, Your Honor, that Judge Pro pointed out was the obligation to fund the trust. There was a $1.9 million obligation to fund the trust. I mean, if we look at the transaction, we're faced with someone, as the record shows, Mr. Fairbrother defended the AMF lawsuit on a pro se basis. So — For a while. For a while. I mean, you know, the record says that he left because of health reasons and so forth. But Mr. Fairbrother was owed $2.5 million from AMF under the contract. And he tried to enforce his rights under the contract, but he did so in the wrong jurisdiction. He did so in Denver. And he did that with counsel. Well, now he pops up in Las Vegas when AMF files suit as pro se litigant. But he's owed $2.5 million. And the contract between Fairbrother and Global shows that Global is obligated to fund the trust fund for Mr. Fairbrother's son to the tune of $1.9 million. So Mr. Fairbrother has obviously taken a discount off of what he's actually owed. In addition, there was forgiveness of debt of the $67,000. In addition, Global did undertake the obligation to fund litigation. So where are these monuments now? Monuments are in Virginia. Global has possession of them. They are in Virginia. They're being displayed outside corporate headquarters. They're being displayed where? Outside of corporate headquarters in Virginia. They tried to make the inauguration, but it didn't happen. So, Your Honor, I mean, I believe when you look at the facts and the arguments that are raised and the analysis that Judge Pro put forth in his findings, facts, conclusions of law, I think he did a commendable job. He looked at some very difficult issues, particularly the issue about having a consolidated case and having someone who doesn't show up for trial and having default entered against that person and whether or not that default is applicable to the party that does appear for trial. And that was a very thorny issue, but I think Judge Pro went through all of the issues and applied this Court's decisions and did so with an appropriate result. All right. Thank you. Your time has expired. Thank you. To address a couple of points, first, I do not believe that Judge Pro ever reached the point where he considered whether or not there was a fraudulent transfer. I believe the analysis stopped when he reached the fact that AMF was not a creditor. And, again, on... No, no, no, no, no, no. Take a look at page 17 of his findings. I think you'll find, pardon me, page 13 of his findings, the Court has additionally found in favor of global and against AMF as to AMF's claims for fraudulent transfer. Sounds pretty clear to me. He got there. Well, Your Honor, I believe that it was based upon the fact that he found that we were not a creditor and that the analysis stopped. Then why did he go through the findings as to the money that was paid by Fairbrother or that he got as a benefit for the transfer? Is that paragraph 12, page 7 of 13? Fairbrother failed to pay global the $67,500 required on or before March 1st, et cetera, et cetera, et cetera. And that was given up. And global, in turn, has assumed payment of legal fees. So he's finding a consideration flowing from Fairbrother, pardon me, from global to Fairbrother, including also the funding of the trust. So that would all be irrelevant and superfluous if he had not delved into the legitimacy of the Fairbrother to global assignment, would it not? And, Your Honor, that's part of the analysis, is you have to look at whether the transfer was made or the obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if the debtor made the transfer. Could you do it a little faster so that we can understand anything? I'll slow it down, Your Honor. Or they incurred the obligation with the intent to hinder, delay, or defraud any creditor of the debtor. Now, the question is any creditor. Now, did Jeffrey Fairbrother make the transfer to avoid or to hinder or to delay any creditor? It has to be a creditor in the action. It can't be a creditor who's not a parent. And, Your Honor, we believe that we were a creditor. But additionally, the way that the statute's written and the language is clear, it says as to any creditor. Was the transfer done? So you think if the transfer was fraudulent as to Mr. Nevitt, then it was fraudulent as to you, even though Mr. Nevitt was not a party to the case? We do believe that, Your Honor. And because the case was saying that a third party, not a plaintiff or not a party to counterclaim it, can be considered in determining whether the transfer was fraudulent as to somebody else? Your Honor, there's no case on point that we found. But with the plain reading of the statute, it says any creditor. It doesn't say any creditor that's a party to the suit. It just simply states any creditor. And when you look at the totality of the circumstances, these individuals who were involved in this transfer were all very much related. Global was attempting to get AMF to enter into a transaction with it, and there was contingencies on that agreement in which they had to resolve the litigation between Nevitt, AMF, Amtec, those are the related entities and companies, and Mr. Fairbrother. That was a direct part of the deal. They couldn't get it done. And as a result, during the pendency, then, judgments are taken against Mr. Fairbrother. Global knows that. Fairbrother knows that. And then they make this transfer that they never tell anybody about. The UCC-1 filings weren't recorded or filed until December of 2005, when, in fact, if you believe the paperwork, the assignment was done in March of 2005. Why wait the nine months? Well, during that nine months, the discovery, the time for filing motions, everything in the Fairbrother case was ending. They didn't file anything with anybody so we would know that there was a transfer made until the case against Mr. Fairbrother was completed, the base file. Then Global appears. And so looking at those facts and circumstances, I believe that it's as to any creditor. And if we get to the point that we're a creditor and that we had a claim, which we believe we do, then the judge pro had an obligation to go through the analysis and actually analyze each step of the fraudulent transfer to determine whether or not it was a fraudulent transfer. Supposing now we decide you're not a creditor. If we send it back, what would happen? Well, Your Honor, I think that's the issue that still has to be addressed by Judge Pro, whether or not we were a creditor. What's that? If you determine that we're not a creditor, obviously there's going to be nothing left for Judge Pro to determine as far as fraudulent transfer because that analysis would have stopped at that point, which is where it stopped at the district court level. Thank you, Your Honor. All right. Thank you both for your argument. This matter will stand submitted.
judges: Noonan, Callahan, Bea